## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYRONE GUY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 10-775-SLR |
| | ) |
| PERRY PHELPS, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

_____

Tyrone Guy. Pro se petitioner.

Elizabeth R. McFarlan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

_____

## MEMORANDUM OPINION

June $\mathcal{J}^0$ , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Tyrone Guy ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:19 p.m. on July 18, 2001, Wilmington Police responded to a 911 call concerning a shooting at Tenth and Madison Streets. *Guy v. State*, 913 A.2d 558, 561 (Del. 2006). When the police arrived, they found a man who had sustained an apparent gunshot wound lying inside a Jack and Jill Ice Cream truck. The victim, Abdullah Alameri, was unresponsive and was pronounced dead a short time after being transported to Christiana Hospital. The medical examiner later determined by autopsy that Aameri had died as a result of a single gunshot wound to his chest. No projectile, however, was recovered from the body. *Id.*

Upon arrival at the crime scene, the police canvassed the area for witnesses and evidence. *Id.* Officer Ragonese interviewed petitioner and his father, Tyrone Guy, Sr. In his report, Ragonese indicated that "the witnesses stated they were in the apartment." The chief investigating officer, Detective Michael Lawson, testified that based on a conversation with Ragonese, he knew that "they" referred to Tyrone Guy, Sr. and petitioner. *Id.*

A thorough search of the truck led to the discovery of a 0.25 caliber casing under a floor mat, a 0.25 caliber projectile in the track of a sliding window, and a 9 mm casing

in the foot well of the driver's side. The company that owned the truck later found a 9 mm projectile inside a folded t-shirt on top of a shelf in the back of the truck. They promptly turned it over to the police. No guns were found. *Id.*

During the course of the investigation, the police learned that Robert Zayas had purchased a soft drink from Alameri a few minutes before the shooting. *Id.* Zayas told the police that he saw petitioner and Akbar Hassan-El, petitioner's co-defendant, near the crime scene and they told him of their plans to rob Alameri's truck. Zayas told them that it was a bad idea, but complied with their request to waive down Alameri's ice cream truck. Even though Zayas saw petitioner with a gun, he said he did not believe that the two would see their plan through. He explained that he wanted to exchange his soda anyway, so he flagged down Alameri. As he spoke with Alameri, petitioner and Hassan-El approached the truck with their faces covered in t-shirts and pushed Zayas out of the way. Zayas said he heard two shots. Petitioner and Hassan-El then ran down an alleyway and scaled a fence leading to petitioner's house. Zayas initially did so as well, but returned to the truck to check on Alameri. He then saw a local resident, Marcus Archy, and told him that petitioner and Hassan-El shot Alameri. Another neighbor also reported hearing gunshots and seeing the three men run away from the truck. *Id.* at 561-62.

Petitioner and Hassan-El were indicted on charges of first degree intentional murder, first degree felony murder, possession of a firearm during the commission of a felony, attempted first degree robbery, and second degree conspiracy. *Id.* at 562. The State notified both defendants that it intended to seek the death penalty in the event

2

they were convicted of first degree murder. Petitioner and Hassan-El were tried together before a jury in November 2003; that proceeding ended in a mistrial after the jury informed the court that it was unable to reach an unanimous verdict as to either defendant. *Id.*

After the mistrial, the State elected to try the defendants separately. *Id.* In July 2004, a Superior Court jury convicted petitioner of first degree intentional murder, first degree felony murder, possession of a firearm during the commission of a felony, attempted first degree robbery, and second degree robbery. *Id.* at 562. The jury recommended that petitioner be sentenced to life imprisonment rather than death, and the Superior Court sentenced petitioner to two life sentences plus a term of years. *Id.* The Delaware Supreme Court affirmed petitioner's convictions. *Id.* at 568.

In March 2004, petitioner, acting pro se, filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 15 at 3) He then moved for the appointment of counsel, and the Superior Court granted that request. Petitioner's new counsel filed a successor Rule 61 motion in January 2008, which the Superior Court denied in August 2008. *See State v. Guy*, 2008 WL 4152735 (Del. Super. Aug. 29, 2008). Petitioner appealed. *See Guy v. State*, 979 A.2d 1110 (Table), 2009 WL 3087248 (Del. Sept. 28, 2009).

In July 2009, during the pendency of his post-conviction appeal, petitioner filed a pro se Rule 61 motion, contending that the Delaware Supreme Court's decision in *Allen v. State*, 970 A.2d 203 (Del. 2009), required that he be given a new trial. *Id.* Because the decision denying petitioner's first Rule 61 was still pending before the Delaware

3

Supreme Court, the Superior Court denied petitioner's pro se Rule 61 motion. *See Guy*, 2009 WL 3087248, at *1. Petitioner appealed this decision, and the Delaware Supreme Court remanded the case to the trial court for the purpose of enabling petitioner's appointed post-conviction counsel to file another Rule 61 motion incorporating petitioner's *Allen* claim. *Id.* Thereafter, the Superior Court denied petitioner's new *Allen* claims, and re-iterated its prior holding denying the claims in petitioner's original Rule 61 motion. *State v. Guy*, ID No.0107017041, Mem. Op., Carpenter, J. (Del. Super. Dec. 1, 2009). The Delaware Supreme Court affirmed that judgment. *See Guy v. State*, 999 A.2d 863 (Del. 2010).

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer (D.I. 15), arguing that the claims either fail to warrant relief under § 2254(d), that they are procedurally barred, or that they are not cognizable.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal

4

habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the

errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see*

*also Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following six grounds for relief: (1) the prosecutor impermissibly struck potential jurors on the basis of race in violation of the Supreme Court's holding in *Batson v. Kentucky,* 476 U.S. 79 (1989); (2) petitioner's trial

7

attorneys provided ineffective assistance in numerous ways; (3) petitioner did not consent to the search of his pager; (4) the felony murder jury instructions were inadequate; (5) the trial court erred by permitting Corporal Rentz to recount the out-of-court statements of other witnesses in a procedure inconsistent with that prescribed by Del. Code Ann. tit. 11, § 3507; and (6) the trial court erred by not sua sponte instructing the jury on the provisions of Del. Code Ann. tit. 11, § 274.

## A. Claim One: Procedurally Barred

During jury selection, the defense raised a *Batson* challenge after the State used five of its first six peremptory challenges to strike African-American jurors. The State responded that five of the challenges were based on criminal history, and the sixth panelist was struck because of her lifestyle and lack of a firm opinion regarding the death penalty. The prosecutor also pointed out that the selected panel included two African-American jurors. *Guy*, 999 A.2d at 868. Defense counsel did not respond to the State's explanation, and the trial court denied defense counsel's *Batson* objection, stating:

I will allow the State to exercise this challenge based upon the record they created. Caution, however, should be given as far as future challenges, because, I will note, of the six challenges that have been made by the State, there have been – and although, perhaps justified – three of them have been black females, two of them have been black males and only one has been a Caucasian.

*Guy*, 999 A.2d at 867. In response, the State repeated its argument that all five of its challenges were based on the potential jurors' criminal history. Defense counsel did not challenge the validity of that argument. *Id.*

8

In claim one of this proceeding, petitioner contends that the prosecutor impermissibly exercised his peremptory challenges on the basis of race, in violation of *Batson*. The record reveals that petitioner did not present an argument alleging a *Batson* violation to the Delaware Supreme Court on direct appeal. Petitioner's first Rule 61 motion (filed by appointed post-conviction counsel) did not assert this *Batson* argument either. However, while petitioner's appeal from his first Rule 61 motion was still pending before the Delaware Supreme Court, petitioner, acting pro se, filed a second Rule 61 motion arguing that he should be granted a new trial based on *Allen v. State*, 970 A.2d 203 (Del. 2009). The Superior Court denied the second Rule 61 motion because petitioner's first post-conviction appeal had not yet been decided, and petitioner appealed the denial of his second Rule 61 motion. After considering the denial of petitioner's second Rule 61 motion, the Delaware Supreme Court remanded petitioner's first appeal from his first Rule 61 motion back to the Superior Court for the purpose of allowing petitioner to modify his first Rule 61 motion to incorporate his *Allen* argument. Petitioner's post-conviction counsel then filed the modified Rule 61 motion on October 20, 2009; the modified Rule 61 motion incorporated the *Allen* argument specifically referred to by the Delaware Supreme Court in its remand order, and also asserted several "new" additional arguments. The instant *Batson* claim was one of the additional new arguments included in the modified Rule 61 motion. After noting that the additional new "arguments [were] inconsistent with the intent of the remand by the [Delaware] Supreme Court," the Superior Court denied them as procedurally barred and untimely. (D.I. 17, *State v. Guy*, ID No. 0107017041, Mem. Op., Carpenter, J. at 3-4 (Del. Super. Dec. 1, 2009)) The Delaware Supreme Court affirmed this decision,

9

explicitly noting that the *Batson* claim was procedurally barred by Rule 61(i)(3) and (4). The Delaware Supreme Court also determined that it could not review the *Batson* claim under Rule 61(i)(5)'s miscarriage of justice because the claim lacked merit.

By explicitly denying claim one as barred by Rule 61(i)(3) and (4), the Delaware Supreme Court articulated a plain statement under *Harris v. Reed* that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural ground precluding federal habeas review. Thus, the court can only review claim one if petitioner demonstrates cause and prejudice.

Petitioner attempts to establish cause for his default of claim one by blaming his two trial attorneys for not raising the *Batson* claim on direct appeal. (D.I. 22 at 72) This effort is unavailing. Although a trial attorney's failure to properly preserve a claim for review in state court can constitute cause for a procedural default of that issue, the attorney's ineffectiveness must amount to a constitutional violation. *See Edwards*, 529 U.S. at 452; *Coleman*, 501 U.S. at 755. In this case, petitioner never presented an ineffective assistance of counsel claim to the Delaware State Courts asserting that counsel should have presented a *Batson* argument on direct appeal. Consequently, this particular ineffective assistance of counsel allegation is itself procedurally defaulted,[1] *See* Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse petitioner's procedural default of the substantive *Batson* claim. *See Edwards*, 529 U.S. at 453-54.

---

[1] Claim two of this proceeding asserts twelve ineffective assistance of trial counsel allegations, none of which assert that petitioner's attorneys were ineffective for failing to raise a *Batson* claim on direct appeal. Although claim two does contain an allegation that petitioner's defense attorneys were ineffective for failing to preserve meritorious issues for appellate review, the court views this allegation as too vague, conclusory, and

10

In the absence of cause, the court need not address the issue of prejudice.

Nevertheless, petitioner has failed to establish prejudice, because he has not

demonstrated a "reasonable probability" that the result of the trial would have been

different if the instant Batson claim was presented on direct appeal. In Batson, the

Supreme Court established a three-step procedure for evaluating whether a prosecutor

has violated the Equal Protection Clause by exercising peremptory challenges for

racially discriminatory purposes.

> First, the defendant must make out a prima facie case by "showing that the
> totality of the relevant facts gives rise to an inference of discriminatory purpose."
> Second, once the defendant has made out a prima facie case, the "burden shifts
> to the State to explain adequately the racial exclusion" by offering permissible
> race-neutral justifications for the strikes. Third, "if a race-neutral explanation is
> tendered, the trial court must then decide . . . whether the opponent of the strike
> has proved purposeful racial discrimination.

Johnson v. California, 545 U.S. 162 (2005). In petitioner's case, the Delaware State

Courts correctly identified the three-part Batson framework applicable to petitioner's

claim. Although petitioner contends that the trial court failed to give a full and complete

Batson analysis because it did not perform the third step of "assessing the

---

unsupported to be construed as providing a potential cause for the default of the instant
Batson claim. Given this conclusion, the court also does not view petitioner's
amendment (D.I. 28) requesting the court to excuse the procedural default of his
ineffective assistance of counsel claims under Martinez v. Ryan as pertaining to post-
conviction counsel's failure to raise as an independent claim defense counsels' failure to
assert the instant Batson claim on direct appeal. Nevertheless, even if the court should
view the vague assertion regarding trial counsels' failure to preserve meritorious issues
for appellate review as including the instant complaint about counsels' failure to raise
the Batson claim on direct appeal, petitioner's procedural default still cannot be excused
under Martinez. Petitioner's post-conviction counsel actually presented the issue of
counsel's failure to preserve meritorious appellate issues in petitioner's initial Rule 61
proceeding; he just did not present the issue on post-conviction appeal. As explained
later in this opinion, Martinez only applies to excuse an attorney's failure to present an
ineffective assistance of trial claim in an initial collateral review proceeding, not an
attorney's failure to raise the claim in an appeal from such a proceeding. See infra at
15-16.

11

persuasiveness of the State's facially race-neutral justification by considering the totality

of relevant facts," the record belies this assertion. As aptly explained by the Delaware

Supreme Court when it alternatively denied petitioner's *Batson* claim as meritless,

> [a]lthough the trial judge did not explicitly state on the record that he was
> "engaging in the third *Batson* analytical step," that he did so is evident from his
> ruling. The court's ruling referred both to the record created by the State and to
> the initial inference of discrimination created by defense counsels' objection. It
> also demonstrated that the trial judge had addressed and evaluated all the
> evidence introduced by each side. Additionally, the trial judge's implicit "warning"
> that future strikes of African-American panelists might not be upheld, "signaled"
> to the parties that even though petitioner had failed to meet his burden to show
> purposeful discrimination, future strikes could weaken the assessment of the
> prosecution's [then sufficient] explanations as to the [first six] challenges.

*Guy*, 999 A.2d at 869 (internal citations omitted).

Here, petitioner attempts to cast doubt on the Delaware Supreme Court's

decision by alleging that the State's "criminal history" justification for four (or five) of the

strikes was insufficient and erroneous, because only two of the panelists had Title 11

convictions; the other panelists had convictions for motor vehicle violations. Petitioner

presented this same argument to the Delaware Supreme Court on post-conviction

appeal, contending that the State's insufficient "criminal history" reason for the

challenges "should have caused the trial judge to suspect that the prosecutor's intent

was discriminatory." *Guy*, 999 A.2d at 868 n.27. The Delaware Supreme Court

rejected this argument because, even if the criminal history information was relevant to

prove discriminatory intent, this information did not establish that the trial court failed to

properly perform a *Batson* analysis. *Id.* The Delaware Supreme Court explained that

the "trial court's findings on the issue of criminal intent (i.e., after performing the third

*Batson* analytical step) largely turn on evaluation of the prosecutor's credibility." *Id.*

The Delaware Supreme Court further explained that the trial court's credibility findings must be reviewed under a deferential standard, which means that the findings "will stand unless they are clearly erroneous." *Id.* Finally, the Delaware Supreme Court held that there was no clear error with respect to the trial court's *Batson* analysis. *Id.*

On habeas review, the highly deferential standard applied for evaluating state-court *Batson* credibility determinations "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* ___ U.S. ___, 131 S.Ct. 1305, 1307 (2011). Consequently, after reviewing petitioner's instant allegation that the State's criminal history justification was insufficient within the context of the aforementioned record, the court concludes that petitioner fails to provide a basis for determining that his *Batson* challenge would have succeeded on direct appeal. Thus, petitioner cannot demonstrate that he suffered prejudice from his counsels' failure to present claim one on direct appeal.

Finally, the court concludes that petitioner's default of claim one cannot be excused under the miscarriage of justice exception, because he has failed to provide new reliable evidence of his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

## B. Claim Two: Ineffective Assistance of Counsel

Claim two asserts that counsel provided ineffective assistance by: (1) failing to suppress petitioner's statement to the police; (2) failing to suppress the search of petitioner's home on the grounds that his consent was invalid because it had been coerced; (3) not calling petitioner to testify at the suppression hearing about the tactics used by police to obtain consent; (4) agreeing to the admission of Officer Ragonese's

13

testimony and report; (5) failing to object to the "cumulative evidence" offered by Officer Ragonese; (6) failing to request a mistrial after the trial court instructed the jury to disregard Officer Ragonese's report; (7) not challenging the adequacy of the trial court's curative instruction regarding Officer Ragonese's report (which had been admitted into evidence); (8) agreeing to the admission of certain out-of-court statements pursuant to Del. Code Ann. tit. 11, § 3507; (9) failing to request a mistrial after the jury requested a copy of Officer Ragonese's report after they had already been instructed to ignore it; (10) failing to protect his speedy trial rights; and (11) failing to preserve other, unnamed, meritorious issues for appellate review. In a letter filed just days before the State filed its answer, petitioner asked to add one more ineffective assistance of counsel allegation: that defense counsel should have objected to the inconsistencies in the "accomplice liability" jury instructions. (D.I. 14) The court thus views petitioner's application as asserting a total of twelve ineffective assistance of counsel allegations.

### 1. Procedurally barred allegations

Petitioner presented all twelve allegations to the Superior Court in his Rule 61 motion, but only presented allegation eight (concerning counsels' failure to object to the manner of introducing the § 3507 statements) to the Delaware Supreme Court in his post-conviction appeal. Thus, he has procedurally defaulted eleven out of the twelve allegations, meaning that the court cannot review the merits of those eleven allegations absent a showing of cause and prejudice.

In a document titled "motion to amend" (D.I. 28), petitioner asserts the ineffective assistance of post-conviction counsel as cause for his default of the eleven ineffective assistance of trial counsel allegations in claim two, and cites *Martinez v. Ryan*, 132

14

S.Ct. 1309 (2012) to support this argument. Although the "motion to amend" is more akin to a traverse, the court will grant the amendment. Nevertheless, for the following reasons, petitioner's attempt to provide cause for his default pursuant to *Martinez* is unavailing.

In *Martinez*, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 1320. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id.* at 1316, 1320. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *Id.* at 1318 -19. Significantly, however, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings.**" *Id.* (emphasis added) The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 1317.

15

In petitioner's case, post-conviction counsel presented the instant eleven
ineffective assistance of trial counsel allegations in petitioner's "initial-review collateral
proceeding" by including them in the first Rule 61 motion; the instant default occurred
because the claims were not then presented to the Delaware Supreme Court on appeal
from that proceeding. Therefore, the *Martinez* rule is inapplicable, and post-conviction
counsels' failure to present these claims in the Rule 61 appeal does not provide cause
to excuse the default of these claims.[2]

In the absence of cause, the court will not address the issue of prejudice.
Moreover, given petitioner's failure to provide any new reliable evidence of his actual
innocence, the miscarriage of justice exception to the procedural default doctrine is
inapplicable. Accordingly, the court will deny as procedurally barred allegations one
through seven, and allegations nine through twelve.

## 2. Allegation eight

During the trial, the State and defense counsel entered into an agreement
regarding the introduction of out-of-court witness statements. First, Corporal Rentz

---

[2] Even if the *Martinez* rule should be liberally interpreted as applying to an attorney's
performance in a post-conviction appeal, the court would not excuse petitioner's default
because he has failed to demonstrate that these claims are substantial. Petitioner
restates the arguments he presented in his Rule 61 motion without providing anything to
demonstrate that these eleven allegations have some merit. When petitioner's instant
allegations are viewed in context with the Superior Court's thorough explanation as to
why it found the eleven ineffective assistance of counsel claims to be meritless, the
court cannot conclude that they have "some merit." Moreover, petitioner's summary
and conclusory assertion that post-conviction counsel erred by not presenting these
allegations on post-conviction appeal does not satisfy his burden to demonstrate that
post-conviction counsel's representation was objectively unreasonable. Significantly,
this is not a case in which post-conviction counsel wholly failed to raise any claims of
ineffective assistance of counsel. Rather, post-conviction counsel raised the eleven
allegations to the Superior Court in the first Rule 61 motion, and petitioner has failed to
overcome the presumption that counsel made a reasonable strategic decision not to
pursue these allegations on post-conviction appeal.

testified to out-of-court statements made by four witnesses. Second, the State introduced taped out-of-court statements of three witnesses, and the defense introduced the taped out-of-court statement of the fourth witness. And finally, all four witnesses testified at the trial. *Guy*, 999 A.2d at 869. This agreement deviated from the standard procedure for introducing out-of-court statements into evidence under Del. Code Ann. tit. 11, § 3507, which requires "the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out of court statement itself. " The jury was also allowed to review the taped statements while deliberating. *Id.*

In his sole exhausted ineffective assistance of counsel allegation, petitioner contends that his trial attorneys were ineffective for permitting Corporal Rentz to testify about what those four witnesses told the police before those witnesses testified at trial. The Superior Court denied this argument as meritless, explaining that "[this procedure] provided [defense counsel] an opportunity from the very beginning of trial to emphasize to the jury the credibility issues of each witness which was a critical part of the defense." *Guy*, 2008 WL 4152735, at *4. The Superior Court opined that counsels' decision was tactical and "reasonable and in no way affected counsels' ability to conduct a thorough and effective cross-examination of the witness when they did testify." *Id.* The Delaware Supreme Court affirmed this decision, holding that petitioner did not meet his burden under either prong of *Strickland.* Given the Delaware state courts' adjudication of this argument, the court must determine if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of clearly established federal law.

17

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

Notably, a court must apply a doubly deferential standard of review when analyzing an ineffective assistance of counsel claim under § 2254(d)(1). "The pivotal question is whether the state court's application of the *Strickland* was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S.Ct. at 785. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. As a result, when assessing prejudice under *Strickland*, a court must determine if petitioner has shown "a substantial, not just conceivable" likelihood that the outcome of the case would have been different if counsel had performed otherwise. *Id.* at 792. Thus, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is

18

precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786.

And finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to the instant allegation of ineffective assistance. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine if the Delaware Supreme Court's denial of the instant allegation as meritless involved a reasonable application of *Strickland*. On post-conviction appeal, petitioner contended that counsels' agreement to the procedure utilized to introduce the witnesses' out-of-court statements "resulted in damaging cumulative evidence being introduced at trial." *Guy*, 999 A.2d at 870. After acknowledging that Delaware Rule of Evidence 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by . . . needless presentation of cumulative evidence," the Delaware Supreme Court agreed with the

19

Superior Court's conclusion that the four out-of-court statements did not constitute "cumulative evidence." The Delaware Supreme Court explained that cumulative evidence is "additional or corroborative evidence to the same point. That which goes to prove what has already been established by other evidence." *Id.* In petitioner's case, the State "used the statements to prove the charges against [petitioner], [whereas] defense counsel used the statements to undermine the credibility of the witnesses who gave those statements." *Id.* Additionally, the Delaware Supreme Court concurred with the Superior Court's holding that defense counsels' purpose for using the out-of-court statements was a "critical part of the defense" and, therefore, constituted sound trial strategy. *Id.*

In their Rule 61 affidavit, trial counsel explained that they entered the agreement to ensure that hearsay objections would only be waived if the State proffered the appropriate witnesses to testify, and that they believed that the manner of introducing the out-of-court statements "was a clear and effective way to get the evidence before the jury." (D.I. 17) All of the witnesses testified at trial, and defense counsel proceeded to conduct a thorough and effective cross-examination.

In this proceeding, petitioner has not provided anything to rebut the presumption that counsels' actions were sound trial strategy. Petitioner has also failed to establish that he suffered any prejudice; significantly, he has not alleged that any of this testimony was inadmissible, nor has provided clear and convincing evidence to rebut the Delaware Supreme Court's factual determination that the out-of-court statements did not constitute "cumulative evidence." Thus, viewing the instant claim through the doubly deferential habeas lens applicable to ineffective assistance of counsel claims

raised in habeas proceedings, the court cannot conclude that the Delaware Supreme Court's decision involved an unreasonable application of *Strickland*. Accordingly, the court will deny the allegation eight of claim two.

## C. Claim Three: Fourth Amendment Violation

In his third claim, petitioner contends that the search of his pager exceeded the scope of his written consent for the police to search his apartment and, therefore, the police violated his Fourth Amendment rights when they seized evidence resulting from the taking of phone numbers from the pager. This claim is unavailing.

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal court cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West*, 505 U.S. 277, 293 (1992). The "full and fair" hearing requirement is satisfied if the state courts provided the petitioner with a pre-trial suppression hearing and the Fourth Amendment claim was considered on appeal. *See United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978). In the Third Circuit, a petitioner can avoid the *Stone* bar only by demonstrating that the state system contains a structural defect that prevented full and fair litigation of the Fourth Amendment claim; notably, "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

After reviewing the record, the court concludes that petitioner had a full and fair opportunity to litigate this Fourth Amendment claim in the state courts. Petitioner filed a pre-trial motion to suppress the evidence seized as a result of the search of his pager on the grounds that the search exceeded the scope of his consent. The Superior Court

21

denied the motion after a suppression hearing. On direct appeal, petitioner asserted

that the Superior Court erred in denying his suppression motion, once again arguing

that the search of the pager exceeded his written consent and the seizure of evidence

resulting from that search violated his Fourth Amendment rights. The Delaware

Supreme Court denied the claim as meritless, explicitly holding that petitioner's written

consent to search his apartment included the contents of his pager. Given this record of

litigation regarding petitioner's suppression motion, the court will deny claim three as

barred by *Stone*.[3]

## D. Claim Four: Inadequate Felony Murder Jury Instructions[4]

In claim four, petitioner asserts that the trial court provided inadequate jury

instructions on the felony murder charge because the instructions only discussed four of

the five elements needed for a felony murder conviction. More specifically, petitioner

contends that the jury was not instructed that he could only be convicted of felony

murder if the murder "facilitated the commission of the felony," and the court's language

that "mere coincidence between the underlying robbery and the murder is not enough"

---

[3] Even if the Superior Court improperly denied petitioner's suppression motion, petitioner's Fourth Amendment claim would not warrant relief; the only relevant issue for habeas purposes is whether he had a "full and fair opportunity to litigate" his Fourth Amendment claim, which he did. *See, e.g., Marshall*, 307 F.3d at 82 (holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."); *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986), *cert. denied*, 479 U.S. 1041 (1987).

[4] The State contends that this claim is procedurally defaulted because petitioner did not present the argument to the Delaware Supreme Court on post-conviction appeal. However, in affirming the Superior Court's denial of petitioner's Rule 61 motion, the Delaware Supreme Court explicitly mentioned this particular argument, and denied it as meritless. Given these circumstances, the court concludes that claim four has been adjudicated on the merits.

22

was insufficient to convey this requirement. Petitioner appears to contend that these
jury instructions deprived him of due process.

The record reveals that the argument in claim four is not the same argument that
was presented to the Delaware Supreme Court on direct or post-conviction appeal. For
instance, on direct appeal petitioner argued that he "was deprived of his statutory right
to an instruction informing the jury of his right under Del. Code Ann. tit.11, § 274 to an
individualized determination of his own culpable mental state and accountability." *Guy,*
913 A.2d at 568. Petitioner contended that, while the jury was instructed that they could
find petitioner guilty of murder on the basis of accomplice liability and they were
instructed as to all four degrees of homicide, they were not fully instructed that petitioner
could only be convicted of the degree of murder that was compatible with his own
culpable mental state and accountability for an aggravating circumstance. (D.I. 17,
Appellant's Op. Br. in *Guy v. State,* No.486,2005 at 42) And, on post-conviction appeal,
petitioner's Supplemental Opening Brief asserted that: (1) the trial court provided two
separate definitions of accomplice liability in its separate instructions for first degree
murder and felony murder, which confused the jury; (2) even though the instruction for
felony murder mentioned foreseeability, the instruction for first degree murder did not
mention foreseeability; and (3) therefore, the difference between the instructions
"confused the jury to such an extent that a new trial [was] warranted." (D.I. 17,
Appellant's Supp. Op. Br. in Guy v. State, No.500,2008, at 8) The Delaware Supreme
Court also viewed petitioner's post-conviction appellate argument as asserting jury
confusion resulting from two different instructions, as demonstrated in its summary of
petitioner's argument:

23

> The jury instruction given with respect to Felony Murder required the jury to find that the murder was a foreseeable consequence of the robbery of the victim. The First Degree Murder jury instruction did not mention foreseeability. Both instructions addressed the law of accomplice liability. [Petitioner] contend that giving the jury one accomplice liability instruction for Murder First Degree, that made no reference to foreseeability, and a second accomplice liability instruction for Felony Murder, confused the jury.

*Guy*, 999 A.2d at 872.

Based on this record, the court concludes that petitioner did not exhaust state remedies for claim four because he did not "fairly present" the instant argument to the Delaware Supreme Court.[5] At this juncture, Delaware Superior Court Criminal Rule 61(i)(1) and (4) would bar petitioner from presenting this issue to the Delaware state courts in a new Rule 61 motion. Consequently, claim four is procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or that petitioner is actually innocent.

To the extent petitioner attempts to establish cause for this default by blaming trial counsel for failing to raise the issue in claim four on direct appeal (D.I. 22 at 67), it is unavailing. Although petitioner appears to have presented a similar ineffective assistance of counsel claim to the Superior Court in his Rule 61 motion, he did not present this particular issue of trial counsels' performance to the Delaware Supreme Court on post-conviction appeal. As previously discussed, the *Martinez* rule does not excuse the failure to present an ineffective assistance of counsel claim on post-conviction appeal when that claim was presented in the initial collateral proceeding.

---

[5] The State asserts that claim four is procedurally defaulted because petitioner presented the argument in his Rule 61 motion, but did not present it to the Delaware Supreme Court on post-conviction appeal. Although the State's reason for finding a procedural default differs from the court's reason, both the State and the court conclude that claim four is procedurally barred.

See supra at 15-16. Thus, the issue of counsels' failure to present the jury confusion/jury instruction issue on direct appeal is itself procedurally defaulted, See Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse petitioner's procedural default of the substantive "felony murder/jury confusion" claim. See Edwards, 529 U.S. at 453-54.

In the absence of cause, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine is inapplicable, because petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claim four as procedurally barred.

## E. Claim Five: Trial Court Error In Admitting Rentz's § 3507 Statement

In claim five, petitioner asserts that the trial court erred by permitting the State to call Corporal Rentz to recount, pursuant to § 3507, the out-of-court- statements of multiple witnesses before they testified. The State contends that petitioner did not exhaust state remedies for this claim because he presented it as an ineffective assistance of counsel claim in his Rule 61 proceeding, rather than as a substantive "trial court error" claim. After reviewing the record, the court concurs with the State's assessment. Petitioner's opening brief on post-conviction appeal clearly presents the issue of Corporal Rentz's § 3507 statements as the basis for an ineffective assistance of counsel claim, phrasing the issue as "whether trial counsel was ineffective in agreeing to allow the State to (1) present the statements of key prosecution witnesses through the chief investigating officer; (2) play the recorded statement s of those same key prosecution witnesses, and (3) permit the introduction of those recorded statements for the jury to review while deliberating." (D.I. 17 Appellant's Op. Br. in Guy v. State,

No.500,2008, at 10) In turn, the Delaware Supreme Court summarized the argument as asserting that counsel were ineffective for agreeing to the procedure used to introduce § 3507 out-of-court statements. *See Guy*, 999 A.2d at 870. Given these circumstances, the court concludes that petitioner did not exhaust state remedies for claim five because he failed to fairly present the same argument contained therein to the Delaware Supreme Court.

At this point in time, Delaware Superior Court Rule 61(i)(1), (3) and (4) would preclude petitioner from presenting the argument in a new Rule 61 motion. Consequently, the claim is procedurally defaulted.

To the extent petitioner's complaint that counsel "failed to preserve meritorious issues for appellate review" is an attempt to establish cause, it is unavailing. Although petitioner presented this ineffective assistance of allegation to the Superior Court in his Rule 61 motion, he did not present the argument to the Delaware Supreme Court on post-conviction appeal. Thus, this particular ineffective assistance of counsel claim is itself procedurally defaulted and cannot constitute cause for petitioner's default of claim five.

Given this conclusion, the court will not discuss the issue of prejudice. And, for the reasons previously discussed, the miscarriage of justice exception to the procedural default doctrine does not excuse petitioner's default. Accordingly, the court will deny claim five as procedurally barred.

26

## F. Claim Six: Improper Jury Instructions Under Del. Code Ann. tit. 11, § 274

In his final claim, petitioner contends that the trial court erred by not, sua sponte, instructing the jury on the provisions of Del. Code Ann. tit. 11, § 274. He appears to assert that the jury did not individually determine petitioner's culpable mental state as well as his accountability for an aggravating circumstance or fact, as required by § 274.

The court is not persuaded that claim six asserts an issue cognizable on federal habeas review. Significantly, petitioner does not assert that the trial court's alleged error with respect to the § 274 instruction deprived him of a fair trial or violated his right to due process. Rather, he appears to contend that the trial court failed to instruct the jury according to Delaware law. It is well-established that "[s]tate courts are the ultimate expositors of state law,"[6] and claims based on errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the court will deny claim eight for failing to assert a proper basis for federal habeas relief.

## V. PENDING MOTION

During the pendency of this proceeding, petitioner filed a motion to amend his application with an argument pursuant to *Brooks v. State*, 40 A.3d 346 (Del. 2012). In *Brooks*, the Delaware Supreme Court held that, "effective March 15, 2012, [in] any case involving accomplice testimony, trial judges must now give our modified version of the *Bland*[7] instruction." *Id.* at 355. The modified *Bland* instruction emphasizes the significance of independent corroboration in assessing accomplice liability. However, petitioner was convicted in 2004, and the modified *Bland* jury instruction is only

---

[6] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

[7] *Bland v. State,* 263 A.2d 286 (Del. 1970).

applicable to cases involving accomplice liability beginning March 15, 2012. Thus, the court will deny petitioner's motion to amend as futile.[8] (D.I. 27); see Fed. R. Civ. P. 15(a).

## VI. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. See 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Slack, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

---

[8] It appears that petitioner's request to amend is an attempt to support claims four and/or six with his Brooks/Bland argument. However, the Brooks/Bland argument would not alter the court's conclusion that claim four is procedurally barred and claim six fails to assert an issue cognizable on federal habeas review which, in turn, further supports the court's conclusion that the amendment would be futile.

28

## VII. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas

relief filed pursuant to 28 U.S.C. § 2254.  An appropriate order will be entered.